In the Matter of BERTRAM JAY WYSELL (Admitted as BERTRAM J. WIESEL), an Attorney, Respondent.

First Department, April 7, 1960.

*Henry Weiner* of counsel (*Allen Harris* and *Daniel J. McMahon* with him on the brief; *Henry Weiner,* attorney), for petitioner.

*Edward J. McCann* for respondent.

*Per Curiam.* Six charges of professional misconduct were brought against respondent. The charges were that the respondent submitted or caused to be submitted to insurance carriers false statements of loss of earnings, false medical reports, false written bills or estimates for automobile repairs and labor costs, for or on behalf of certain persons represented by the respondent. Additionally, it was charged that the respondent failed to file statements of retainer and closing statements in certain cases, and that the respondent engaged in fee-splitting with an adjuster who was not an attorney.

The Referee dismissed the charge of fee-splitting on the issues of fact presented, but sustained the remaining charges. The report of the Referee should be confirmed.

The respondent contends that in many of the cases there was no direct proof that respondent personally drafted or obtained and physically delivered the false statements to the carriers.

This argument requires some examination, by way of example, of the evidence submitted in support of the charges. It should be noted that the respondent did not testify before the Referee.

Charge 1 alleged that the respondent knowingly submitted or caused to be submitted false statements of loss of earnings for certain persons represented by the respondent. Ten persons were named and the charges sustained as to six of them.

Illustrative of the testimony upon which the Referee based his affirmative finding is the testimony of one X (a claimant correctly identified by name in the proceedings and in the report) who had been employed by M Company for 28 years. He was

involved in an automobile accident in which he sustained minor injuries, but lost no time from work as a result of the accident. He testified that he related these facts to respondent at the time he retained him as his attorney. There was produced from the files of the insurance company a written statement, purportedly of the P Supply Co., stating that X was employed by it, and that as a result of the accident X lost a total of three weeks work at a salary of $85 per week. The statement was purportedly signed by one A, who testified at the disciplinary hearings that he had known respondent for 36 years, had referred cases to him, but that he had never seen the statement and had nothing to do with its preparation. X in turn testified that he had never worked for P Supply Co., did not know A, had never told respondent he worked for P Supply Co., and had never seen the written statement.

The adjuster, one O, who worked for respondent from time to time, testified that when statements from employers, doctors or automobile repairmen were needed to sustain a loss of wages, physical injury or property damage claim of respondent's clients, the respondent would secure the needed statements and give or forward them to O, or directly to the insurance company.

Charge 2 was that the respondent submitted or caused to be submitted false medical reports or copies of purported medical reports to insurance carriers for persons represented by respondent. Eleven such persons were named and the Referee sustained the charges as to three of them.

In one of these cases the client, whom we shall refer to as L (correctly identified by name in the proceedings and in the report), testified that she was a passenger in an automobile and sustained certain injuries as a result of an accident in 1958. She testified she was treated by her own doctor and paid him $30. She retained respondent and her case was settled. There was produced from the files of the insurance carrier a medical report allegedly submitted by one Dr. M showing various injuries with a total charge of $125 for treatment. L testified she did not know Dr. M, had never been treated by him, and indeed knew no doctor in the area where his office was supposedly located.

O, the adjuster, testified as under Charge 1, specifically connecting respondent with the submission of the false material which was used in effectuating a settlement.

Charge 3 dealt with the purported submission by two of respondent's clients of false estimates or bills of repair for property damage to automobiles involved in accidents. The

quality of the evidence in support of the charge, which was sustained, fully warranted the finding. The clients testified that repairs to their automobiles were not made by the persons or companies whose names appeared on the bills or estimates taken from the carrier's files, and the actual cost differed from that shown.

In short, testimony by the former clients of respondent, by the persons named as employers or alleged employers, and by the adjuster amply demonstrated or proved the falsity of the statements of loss of earnings, repairs and medical reports. The fact that such statements or reports were produced from the files of the carriers relating to the claimants involved, makes inescapable the inference that they were submitted or caused to be submitted by the respondent.

These charges were carefully investigated, fully documented, meticulously presented by the petitioner; the proof weighed, analyzed, and appraised by the Referee with scrupulous fairness. He resolved any reasonable doubt in favor of the respondent, as witness his rejection of Charge 4, and we sustain the findings as made.

The findings sustaining Charge 5, failure to file statements of retainer, and Charge 6, a failure to file closing statements, were not contested and need not be further considered in detail.

The facts directly proved unquestionably establish the existence of the underlying facts in question, that is, that the respondent knowingly submitted or caused to be submitted the false statements and reports as charged.

Disciplinary proceedings are not criminal proceedings, and the " refusal to testify raises the legal presumption of the truth of these facts, which must have been known to defendant, and which he failed to contradict." (*Matter of Association of the Bar of the City of N. Y.* v. *Randel,* 158 N. Y. 216, 219.) For " [i]f there was any possible statement that the defendant could have made, calculated to explain his conduct and relieve himself from the serious consequences of the facts as disclosed by this record, he should have taken the stand, made a full statement and submitted himself to cross-examination." (*Matter of Association of the Bar of the City of N. Y.* v. *Randel, supra,* p. 221.)

The practice of law is a privilege surrounded with a public interest but vested as well with a private responsibility. The public must be protected " in its reliance upon the integrity and responsibility of the legal profession." (*Matter of Gould,* 4 A D 2d 174, 175.)

The record amply sustains the findings and report of the Referee, and there is a demonstrated unfitness to remain a member of the Bar. Respondent should be disbarred.

BOTEIN P. J., BREITEL, VALENTE, STEVENS and BERGAN, JJ., concur.

Respondent disbarred.